<u>NOT FOR PUBLICATION</u>

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| HEATHER D. CUNNINGHAM,<br><br>    Plaintiff,<br><br>       v.<br><br>CAROLYN W. COLVIN, ACTING<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>    Defendant. | Civil Action No. 13-2651 (RMB)<br><br>  **OPINION** |

BUMB, United States District Judge

    Plaintiff Heather D. Cunningham ("Plaintiff"), brings this appeal on behalf of her minor son, K.T.B. ("Claimant"), and is seeking judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI"). For the reasons set forth below, the Court vacates the decision of the administrative law judge ("ALJ") and remands this action to the ALJ for further proceedings.

**I.    STANDARD OF REVIEW**

    In social security cases, the Commissioner's decision must be upheld if it is supported by substantial evidence. <u>Allen v. Bowen</u>, 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence exists when there is "more than a mere scintilla. It means such

relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). If the ALJ's findings of fact are supported by substantial evidence, then those findings are conclusive. 42 U.S.C. § 405(g); Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992) (citation omitted). Thus, a district court is bound by the findings of the ALJ that are supported by substantial evidence, "even if [it] would have decided the factual inquiry differently." Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (citations omitted). To determine if such substantial evidence exists, the district court must review the record as a whole. See 5 U.S.C. § 706.

Under the Social Security Act, a child under 18 years old is eligible for SSI if he or she is "disabled," meaning he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). To determine whether a child is disabled, the regulations establish a three-step sequential process. 20 C.F.R. § 416.924(a). At step one, the ALJ

2

considers whether the child is engaging in substantial gainful activity. Id. If so, the child is not disabled. If not, the ALJ proceeds to step two, determining whether the child has a medically determinable severe impairment or combination of impairments. Id. If not, the child is not disabled. If so, the ALJ proceeds to step three. Id.

At step three, the ALJ assesses whether the child has an impairment or combination of impairments that meets, medically equals, or functionally equals a listed impairment set forth in 20 C.F.R. § 416.924(d). An impairment or combination of medical impairments "medically equals" a listed impairment "if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a). An impairment or combination of impairments "functionally equals" a listed impairment if the child has "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). The six domains of functioning are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). A "marked" limitation exists when it "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities," and is

3

considered "'more than moderate' but 'less than extreme.'" 20 C.F.R. § 416.926a(e)(2). An "extreme" limitation exists when it "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities," and is considered "more than marked" but not necessarily equivalent to "a total lack or loss of ability to function." 20 C.F.R. § 416.926a(e)(3).

The ALJ determines the child's ability to function in each domain based on "all the relevant factors," including the effectiveness of medication on the child, the ability of the child to function in school, and the effects of structured settings on the performance of the child. 20 C.F.R. § 416.926a(a)(1)-(3). If the ALJ finds that the requirements of the third step are met, the child is considered disabled under the Social Security Act for purposes of SSI. 20 C.F.R. § 416.924(d)(1).

## II.  BACKGROUND

### a. Procedural History

On July 10, 2009, Plaintiff filed an application for SSI on behalf of her son, a child under 18 years of age, alleging a disability onset date of September 1, 2005. (Administrative Record "R." at 15.) This claim was denied on December 30, 2009 and again upon reconsideration on May 12, 2010. (Id.) Plaintiff then requested a hearing, which was held before the Honorable

Frederick Timm, ALJ, on February 3, 2011. (Id. at 14-15.)
Plaintiff appeared at the hearing, accompanied by his mother,
and was represented by counsel, David S. Bross. (Id. at 15.) The
ALJ issued his decision on April 28, 2011, finding that
Plaintiff was not disabled and denying SSI. (Id. at 12-29.)
Plaintiff filed a Request for Review of the ALJ's decision,
which was denied by the Appeals Council on February 14, 2013
(id. at 1), and, thus, the ALJ's decision became the final
decision of the Commissioner. See 20 C.F.R. § 404.981.

### b. Factual Background

Claimant K.T.B. was born on August 8, 1998, and was seven
years old at the alleged onset of his disability on September 1,
2005. (Id. at 36, 62.) Claimant has been diagnosed with
Attention Deficit Hyperactivity Disorder ("ADHD"), as well as
Oppositional Defiant Disorder ("ODD") and mood disorder. (Id. at
36, 258.)

### i. Medical Evidence

On February 10, 2009, Claimant was seen by Dr. Martin
Laufe, who reported in his progress notes that Claimant had
suffered a concussion in 2008, experienced mood instability and
anxiety, and refused to take responsibility for his actions.
(Id. at 254.) Dr. Laufe further noted that while Claimant was
fidgety, hyperactive, aggressive, and exhibited poor impulse
control, he was also of above average intelligence, oriented,

and cooperative. (Id. at 256.) Dr. Laufe noted that Claimant "does well in school," and "has friends," but also talks back to teachers and has been suspended (possibly twice). (Id. at 257.) On March 10, 2009, Dr. Laufe again noted Claimant's defiant behavior in school but also observed that Claimant had shown improvement. (Id. at 253.) Dr. Laufe again referenced Claimant's "good grades," noting that he was "bright" despite the fact that it can take "several hours" to complete his homework. (Id. at 253.)

Several weeks later, on March 31, 2009, Dr. Laufe reiterated his opinion that Claimant was "much improved." (Id. at 251.) In addition, Dr. Laufe reported marked improvement in Claimant's mood, anger management, and willingness to complete homework. (Id.) On May 26, 2009, Dr. Laufe similarly noted that Claimant was doing well with no mood, anxiety, or sleeping problems. (Id.) On another follow-up visit, on August 17, 2009, Dr. Laufe reported that Claimant was having no trouble with depression, sleeping or eating, but that he had experienced an episode at camp where he had choked another boy. (Id. at 252.) Despite this episode, Dr. Laufe acknowledged that Claimant plays well with others. (Id.)

On September 30, 2009, Claimant was seen by Dr. Jay Schmulowitz, who noted Claimant's "overall more positive adjustment to school peers" and "more positive attitude." (Id.

at 326.) Again, on November 11, 2009, Dr. Schmulowitz noted signs of improvement in Claimant, reporting that he was less angry, difficult, and sad. (Id.) However, Dr. Schmulowitz noted Claimant's need to be more organized and to develop a coping strategy. (Id.)

Claimant was also seen by two state psychologists during this time. On December 22, 2009, Dr. David Bogacki performed a consultative psychological examination on Claimant at the request of the Social Security Administration. (Id. at 18, 286.) Claimant was reported to have suffered from emotional problems, depression and auditory hallucinations as a result of his grandfather's death two years prior. (Id. at 286.) Dr. Bogacki concluded that Claimant had major depressive disorder with psychotic features in partial remission, attention-deficit disorder in partial remission, and mild social problems. (Id.) However, like Dr. Laufe (id. at 253) and Dr. Schmulowitz (id. at 325), Dr. Bogacki noted that Claimant had greatly improved with treatment and medication. (Id. at 18 (citing Ex. 13F at 2); see also id. at 287.) Dr. Bogacki also administered a Global Assessment of Functioning ("GAF") test to Claimant, who scored a 65 indicating that he has some mild difficulties in social, occupational, and school settings, but generally functions pretty well and is involved in some meaningful personal relationships. (Id. at 18; see also id. at 287.)

A few days later, on December 24, 2009, Dr. Carol Bruskin, a state agency reviewing psychologist, assessed Claimant in regard to the six functional equivalence domains. (See id. at 299-304.) Dr. Bruskin found in relevant part that Claimant had no limitation in his ability to interact and relate with others, and that he was less than markedly limited in the domain of attending and completing tasks. (Id. at 301-02.) Based upon her assessment, Dr. Bruskin concluded that Claimant does not functionally meet the requirements of a listing, which was later affirmed by State agency psychologist, Dr. Joseph Benvicenne. (Id. at 308-13.)

Claimant continued seeing Dr. Schmulowitz in 2010. During a January 7, 2010 meeting, Dr. Schmulowitz noted anger outbursts and meltdowns as well as the need to work on attention or concentration issues. (Id.) Claimant also saw Dr. Schmulowitz on February 4, March 4, and April 5, 2010, during which some angry outbursts or meltdowns were noted and coping strategies were discussed. (Id.) In his April 5, 2010 notes, Dr. Schmulowitz wrote that Claimant had become more stable with recent medication changes made by Dr. Laufe[1] and had also improved his school work, although he needed to take more responsibility for

---

[1] Although Dr. Schmulowitz's notes frequently refer to Claimant's meetings with Dr. Laufe in early 2010, the Record does not appear to contain any of Dr. Laufe's progress notes from that time period. (Compare Ex. 14F with Exs. 19F, 20F.)

homework. (Id. at 325.) On May 5, 2010, Dr. Schmulowitz reported that Claimant was having "invincibility" thoughts. (Id.)

On May 20, 2010, Dr. Schmulowitz filled out a Medical Listing Questionnaire, in which he noted that he had diagnosed Claimant with ADHD and bipolar disorder, and described Claimant as displaying marked irritability, tendency to self-punish, mood swings, hyperactivity, and violent behavior. (Id. at 314, 316.) Dr. Schmulowitz further opined that Claimant had met the requirements of listings 112.04 and 112.11. (Id.) A few months later, on August 23, Dr. Schmulowitz reported that Claimant's self-control had improved. (Id. at 324.) Then, on October 14, Dr. Schmulowitz recorded additional improvements in Claimant's attitude at home and schoolwork. (Id.) Indeed, on December 6, Dr. Schmulowitz reported that Claimant had made the honor roll at school. (Id.)

### ii. Plaintiff's Testimony Before the ALJ

During the hearing before the ALJ, Claimant's mother testified that Claimant has become progressively more violent over time, often isolates himself when upset, has feelings of invincibility, has trouble behaving properly, focusing, and maintaining a stable mood, and hears voices that tell him to commit violent acts. (Id. at 37, 46, 55.) Although Claimant still experiences difficulties, his mother acknowledged that he had improved with medication. (Id. at 48.) Claimant attends

regular classes in school but has a 504 plan in place that ensures he has access to front row seating in class and is allowed more time for test-taking. (Id. at 39, 44, 45; see also id. at 167.)

In terms of his interactions with others, Plaintiff testified that Claimant fights with his brother more than typical siblings and once wrapped a rope around his brother's neck. (Id. at 41, 53.) She also testified that Claimant often gets into fights with his peers at school, has relatively few friends, has trouble completing homework and chores without constant guidance, and is often disrespectful to teachers. (Id. at 40, 43, 53, 48.)

### c. The ALJ's Decision

After applying the three-step sequential process, the ALJ concluded that Claimant was not disabled for purposes of SSI. (R. at 12.) At the first step, the ALJ found that Claimant had not engaged in substantial gainful activity since the time of the SSI application date. (Id. at 18.) At the second step, the ALJ found that Claimant's ADHD, ODD, and mood disorder were all severe impairments. (Id.) At the third step, however, the ALJ found that these severe impairments neither met, nor medically or functionally equaled, a listed impairment. (Id. at 19-20.) With regard to functional equivalence, the ALJ found that Claimant suffered a marked limitation in the domain of "caring

for yourself," a less than marked limitation in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, and healthy and physical well-being. (Id. at 22-28.) He further found that Claimant was not limited in the domain of moving and manipulating objects. (Id. at 28.)

## III. DISCUSSION

On appeal, Plaintiff challenges step three of the ALJ's findings, arguing (1) the ALJ erred in either rejecting or failing to adequately address the opinions of Dr. Schmulowitz; (2) the ALJ failed to address significant contradictory evidence, such as treatment notes of Dr. Laufe and Dr. Schmulowitz, demonstrating that Claimant functionally met the requirements of a Listing; (3) the ALJ erred in rejecting Plaintiff's testimony without providing an adequate explanation; and (4) the ALJ's opinion that the Claimant has less than marked limitations in the domains of attending and completing tasks and interacting and relating with others is not supported by substantial evidence.[2] Several of these arguments are

---

[2] Plaintiff improperly refers to this argument as "[w]hether [s]ubstantial evidence exists that the plaintiff has marked limitations in his abilities to 'Attend and Complete Tasks' and to 'Relate with Others.'" (Br. at 1.) Allen, 881 F.2d at 39 ("Our standard of review, as was the district court's, is whether the Secretary's decision is supported by substantial evidence in the record."); Landeta v. Comm'r of Soc. Sec., 191 F. App'x 105, 110 (3d Cir. 2006) ("As stated above, we must

intertwined. Because the Court finds that the ALJ failed to address the medical records from Dr. Laufe, which seem to contradict several of the ALJ's conclusions and undermines his rejection of Dr. Schmulowitz's opinions, the Court will remand this matter to the ALJ for further consideration.

### a. The ALJ Erred In Rejecting the Treating Physician's Opinions

Plaintiff first argues that the ALJ erred in rejecting Dr. Schmulowitz's opinions that Claimant was "markedly" limited in his ability to interact and relate with others and in his ability to attend and complete tasks.[3]

An ALJ must consider every medical opinion in the record and decide how much weight to give each. 20 C.F.R. § 404.1527(c). An ALJ must, however, accord "treating physicians' reports . . . great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Plummer, 186 F.3d at 429 (internal citations omitted). However, the opinion must be "well supported by medically acceptable clinical and laboratory diagnostic techniques and [ ] not inconsistent with other substantial evidence in the record."

---

determine whether substantial evidence supports the decision of the ALJ, not whether the facts might have led us to a different conclusion.").

[3] Plaintiff does not challenge the ALJ's conclusions with respect to the other four functional domains.

Alexander v. Shalala, 927 F. Supp. 785, 794–95 (D.N.J. 1995),
aff'd per curiam, 85 F.3d 611 (3d Cir. 1996); see also 20 C.F.R.
§ 416.927(c)(2) (noting the opinion of the treating physician
about the severity of an impairment is to be given controlling
weight when the opinion "is well-supported by medically
acceptable clinical and laboratory diagnostic techniques and is
not inconsistent with the other substantial evidence in your
case record").

The ALJ must also consider the findings and opinions of
state agency medical consultants and other sources consulted in
connection with the hearing. 20 C.F.R. § 404.1527(e)(2)(i). If
non-examining medical source opinions are supported by medical
evidence in the record, they may constitute substantial evidence
and override a treating physician's opinion. Alexander, 927 F.
Supp. at 795. "When a conflict in the evidence exists, the ALJ
may choose whom to credit but cannot reject evidence for no
reason or for the wrong reason. The ALJ must consider all the
evidence and give some reason for discounting the evidence she
rejects." Plummer, 186 F.3d at 429 (internal citations omitted).
An ALJ errs by failing to address evidence in direct conflict
with his findings. Landeta v. Comm'r of Soc. Sec., 191 F. App'x
105, 110 (3d Cir. 2006) (finding that doctor's report did not
conflict with the ALJ's conclusion and thus ALJ did not err in
failing to mention it); see also Richardson v. Comm'r of Soc.

13

Sec., No. 12-6422, 2013 WL 5816883, at *7 (D.N.J. Oct. 29, 2013).

Here, the ALJ cited Dr. Schmulowitz's opinions regarding Claimant's functional limitations, i.e., that he suffered marked limitations in attending and completing tasks, and interacting and relating with others. (R. at 21-22.) However, the ALJ concluded that "this assessment [is] inconsistent with the evidence of record" and thus deserved "little weight." (Id. at 22.) In particular, the ALJ noted that Plaintiff had recorded less restrictions in Claimant's ability to interact with others. (Id. (citing Ex. 11E at 10).) Indeed, Plaintiff reported in March 2010 that Claimant has friends his own age, is able to make new friends, and plays team sports. (Id. at 191.) The ALJ further noted that Claimant "presented to examination fully oriented with clear sensorium and goal-directed speech" and that Dr. Schmulowitz's notes reflected improvement with counseling and medication. (Id.) The ALJ also accorded "some weight" to the conflicting opinions of the state psychologists, Dr. Bruskin and Dr. Benvicenne, who found significantly less limitations than Dr. Schmulowitz. (See Ex. 15F, 18F.)

Plaintiff argues that the ALJ erred because Dr. Schmulowitz's opinions (1) were consistent with his progress notes, (2) were consistent with the function report submitted by Plaintiff as well as her testimony, (3) are corroborated by two

14

emails from Claimant's schoolteacher who reported poor behavior, inattentiveness, and a failure to prepare for class (see id. at 327-38), and (4) are corroborated by the progress notes of Dr. Martin Laufe, who began treating Claimant in February 2009. Plaintiff then argues that the ALJ failed to adequately provide his reasoning for rejecting this contrary probative evidence. See Burnett, 220 F.3d at 121 ("The ALJ did err by reason of his failure to consider and explain his reasons for discounting all of the pertinent evidence before him in making his residual functional capacity determination.").

First, Plaintiff contends that the ALJ failed to adequately address Dr. Schmulowitz's progress notes, which support his conclusions regarding Claimant's functional limitations. However, as noted by the ALJ, Dr. Schmulowitz's progress notes (set forth at length above) reflect considerable improvement in Claimant's interactions with school peers, his attitude and self-control, as well as his academic performance. (See R. at 324-26.) Dr. Schmulowitz had also noted that Claimant was more stable due to his medication. (Id. at 325.) Several other medical records, including notes of Dr. Laufe and Dr. Bogacki, similarly reflect that Claimant had improved with treatment and medication. (See id. at 253 (Dr. Laufe reported "some improvement" with medication); id. at 287 (Dr. Bogacki noted hyperactivity had improved with medication and counseling).)

15

Moreover, while Plaintiff cites certain notations of Dr. Schmulowitz which the ALJ failed to specifically address, such as an "incident" in school or the Claimant's need to be more organized and focused, these issues were generally discussed by the ALJ in his opinion. (See generally id. at 21-22, 24 (noting Claimant's "history of behavioral problems" and inattention issues).) The ALJ need only address the "obviously probative exhibits," Dobrowolsky, 606 F.2d at 403, and is not expected to give an analysis of medical and scientific evidence that is beyond his or her expertise. Cotter v. Harris, 642 F.2 700, 705 (3d Cir. 1981). The ALJ satisfied that requirement by acknowledging Claimant's "history of behavioral problems at school and at home," as well as his inattention and focus issues. (Id. at 21.) The opinion then explained that other evidence contradicted the notion that these issues were severe: Dr. Bogacki described Claimant's behavioral problems as merely "mild" (id. at 21 (citing Ex. 13F at 2)), and those problems improved with counseling and medication (id. at 21 (citing Ex. 6F at 1-2; 13F at 2; 19F at 8)). Moreover, it is clear from the ALJ's opinion, and his reference to Dr. Schmulowitz's progress notes (id. at 22), that the ALJ considered that evidence and rejected it for the reasons he set forth, albeit briefly, in his opinion. This Court is thus bound by the findings of the ALJ that are supported by substantial evidence, "even if [it] would

16

have decided the factual inquiry differently." Hartranft, 181 F.3d at 360.

Second, Plaintiff argues that the ALJ failed to sufficiently address the function report completed by Plaintiff as well as her hearing testimony, which she argues are also consistent with Dr. Schmulowitz's opinions. Plaintiff testified regarding Claimant's tendency not to complete his chores and homework before Plaintiff arrived home from work, at which point she needed to coach him to remain focused and complete his tasks. (R. at 39, 43.) In the function report, Plaintiff also cited Claimant's difficulty staying focused and his ability to easily become distracted or frustrated. (Id. at 194.) In addition, Plaintiff testified that Claimant has trouble with team sports, lacks a variety of friends, was involved in an episode where he wrapped a rope around his brother's neck, and has a tendency to fight his peers at school and disrespect his teachers. (R. at 48-49, 52-53.) According to Plaintiff, the ALJ "selectively summarized" Plaintiff's testimony and "ignored" testimony that supported Dr. Schmulowitz's conclusions. (Br. at 17-18, 22-23.) The Court disagrees and notes, as did the ALJ, that Plaintiff also provided substantial evidence undercutting the conclusions reached by Dr. Schmulowitz.

Notably, contrary to Plaintiff's argument, the ALJ's opinion sufficiently summarizes Plaintiff's testimony and

reflects his consideration of the same. For example, the ALJ states that Plaintiff testified regarding Claimant's "difficulty staying on task" and cites to the function report in which Plaintiff wrote that Claimant "does not finish what he starts." (Id. at 21, 24 (citing Ex. 1E at 9).) However, the ALJ also explained that Plaintiff provided contradictory evidence when she stated that Claimant "keeps busy on his own, and completes his homework, and completes his chores most of the time." (Id. at 24; see also id. at 194.) The ALJ also addressed evidence demonstrating Claimant's involvement in multiple fights in school, violent thoughts, history of behavioral problems at home and school, and disrespect toward others. (Id. at 21, 25.) He then proceeded to explain the reasons for which he assigned less weight to Plaintiff's testimony, i.e., her own contradictory assertions regarding the severity of Claimant's impairments. For example, the ALJ cited Plaintiff's testimony that Claimant has friends his own age, can make new friends, generally gets along with people in authority, and is able to participate in team sports. (Id. at 25; see also id. at 191.) Dr. Bogacki and Dr. Laufe also reported that Claimant has friends, plays well with others, and "likes to socialize and has many friends." (Id. at 252, 257, 287.) Although the function report completed by Plaintiff asserts that Claimant isolated himself at times and was oppositional toward authority after receiving criticism, the

18

ALJ refers to this evidence (see id. at 25) as well as the other probative evidence provided by Plaintiff that undermines those statements. Accordingly, the Court finds that the ALJ fairly addressed the probative portions of Plaintiff's testimony as well as the portions that tended to support Dr. Schmulowitz's conclusions. In weighing the evidence from Plaintiff, the ALJ provided his reasoning for according less weight to her testimony and noted the substantial evidence contradicting both Plaintiff's testimony and Dr. Schmulowitz's conclusions regarding the severity of Claimant's impairments. Cf. Burnett, 220 F.3d at 121.

Third, Plaintiff argues that the ALJ failed to sufficiently address the two emails from Claimant's schoolteacher, Crystal Bates, which Plaintiff asserts support Dr. Schmulowitz's conclusions. On December 19, 2010, Ms. Bates provided Plaintiff with an update on Claimant, noting "his behavior seems to be deteriorating," and he is not "being consistent with getting his daily agenda filled out," which he is supposed to be doing "without being prompted." (R. at 328.) Then, a few weeks later, on January 13, 2011, Ms. Bates informed Plaintiff that Claimant was "falling back into poor habits," not bringing his notebook to class, and was putting his head down causing him to not be "paying attention in class." (Id. at 327.) The Court is not convinced that this evidence is probative, contradictory

19

evidence. Rather, Ms. Bates seems to recognize Claimant is able
to, and typically is, engaged and attentive in the classroom but
is experiencing minor behavioral issues. The ALJ need not
address every piece of relevant evidence, especially where, as
here, that evidence does not contradict his conclusions. See Hur
v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004); Dobrowolsky,
606 F.2d at 403.

Finally, Plaintiff contends that the ALJ did not adequately
consider Dr. Laufe's progress notes, which Plaintiff argues
provide medical support for Dr. Schmulowitz's opinions
concerning Claimant's functional limitations. Specifically,
Plaintiff points to notations in Dr. Laufe's notes that describe
incidents in which Claimant was disrespectful, unfriendly,
irresponsible, or reported difficulties in completing homework.
(Id. at 252-55.) Plaintiff also points to the Mental Status
Examination, completed by Dr. Laufe on February 10, 2009, which
described Claimant as "fidgety/hyperactive," "aggressive," and
subject to a "poor impulse control."[4] (Id. at 256.) The Court
agrees with Plaintiff that Dr. Laufe's notes do provide some
support for Dr. Schmulowitz's conclusions that Claimant is
limited to some extent in his ability to interact with and

---

[4] Dr. Laufe also described Claimant as "cooperative,"
"neat/appropriate," with a "regular rate/rhythm" of speech,
"appropriate" affect, a "euthymic" mood, and "appropriate"
thought content. (Id. at 256.)

relate to others and his ability to attend and complete tasks. However, Dr. Laufe's notes also provide substantial support for the ALJ's conclusions regarding the medical evidence of record and that Claimant is less than markedly limited in these domains. For example, Claimant saw Dr. Laufe twice in March 2009, and during both meetings Dr. Laufe reported significant improvements in Claimant's mood, anxiety levels, sleeping and eating patterns. (Id. at 252, 253.) On May 26, 2009, Dr. Laufe recorded Claimant was "doing well" and showed continued improvement with no mood or anxiety issues. (Id. at 251.) Then, on August 17, 2009, Dr. Laufe's notes report that Claimant's "moods [were] much more stable," he was playing well with others, and was having no trouble with depression, sleeping, or eating. (Id. at 252.) By December 22, 2009, Claimant was "doing good [sic]," obtaining As and Bs in school, completing his homework, and sleeping well. (Id. at 291.) Thus, considering the notes in whole, Claimant appears to be benefitting from continued counseling and medication, and improving both his mood issues as well as his grades — as the ALJ concluded. Indeed, by the end of 2009, Claimant was an above average student and made the honor roll. (Id. at 324.) The ALJ's opinion, however, does not discuss Dr. Laufe's notes.

As explained above, the ALJ must generally accord the treating physician's opinion regarding the nature and severity

of the Claimant's impairments great weight unless it is
contradicted by medical evidence. Here, the ALJ rejected the
treating physician's opinion, finding it "inconsistent with the
evidence of record." The Court believes this conclusion, as well
as the ALJ's ultimate conclusions regarding Claimant's
functionality in the relevant domains, is supported by
substantial evidence in the record, as discussed above, however
the lack of discussion concerning Dr. Laufe's treatment notes
causes this Court concern. Thus, the Court will remand the
matter to the ALJ for further consideration of Dr. Laufe's
notes.[5] See Adorno v. Shalalau, 40 F.3d 43, 48 (3d Cir. 1994)
(remanding for failure to make findings of fact concerning
nature and demands of prior occupation); Burnett, 220 F.3d at
121 (remanding for failure to address certain evidence); see
also Lippincott v. Comm'r of Soc. Sec., No. 12-7175, 2013 WL
5973504, at *24 (D.N.J. November 8, 2013) (remanding for further
factual findings); Ibanibo v. Comm'r of Soc. Sec., No. 11-3822,
2012 WL 2945748, at *7 (D.N.J. July 18, 2012) (remanding "so
that the ALJ may consider Plaintiff's diagnoses of hypertension,
a post-repaired aortic aneurysm, and ischemic heart disease at
step three of the disability inquiry"); Morency v. Bowen, 677

---

[5] Plaintiff's second argument, that the ALJ failed to
address substantial contradictory evidence in the record, is
also based upon the ALJ's failure to address Dr. Laufe's
treatment notes and thus necessitates remand.

22

F.Supp. 260 (D.N.J. 1988) (remanding because the ALJ made an improper finding under 20 C.F.R. 404.507(c)).

### b. The ALJ Failed to Address Dr. Schmulowitz's Opinion That Claimant Met the Requirements of the Listings

Relatedly, Plaintiff argues that the ALJ failed to consider Dr. Schmulowitz's opinion, as set forth in the Medical Listing Questionnaire, that Claimant meets the criteria of Medical Listings 112.04 and 112.11. (See R. at 314.) In finding that Claimant's conditions did not meet the criteria of any Listing, the ALJ noted only that, "after a thorough review of all evidence of record . . . the claimant's symptoms . . . do not rise to the level of severity required by the listings for presumptive disability." (Id. at 20.) Nowhere in the ALJ's opinion did he specifically cite Dr. Schmulowitz's opinion that Claimant met the Listings, much less discuss the doctor's rationale. The Commissioner suggests that the ALJ's rejection of Dr. Schmulowitz's conclusions regarding Claimant's functional limitations impliedly supports his rejection of Dr. Schmulowitz's separate opinion that Claimant meets the Listings. (See Opp. at 13 ("Since, the doctor's opinion that KTB directly met the Listings was even more restrictive, the ALJ clearly found it to be unreliable for the same reasons.).) The Court is inclined to agree.

As noted by the Commissioner, the functional domains addressed by Dr. Schmulowitz in support of his opinion that Claimant functionally meets the Listings and the criteria for Listings 112.04 and 112.11 are similar. To meet the Listings, Plaintiff must show two of the following criteria: (a) marked impairment in cognitive/communicative function; (b) marked impairment in social functioning; (c) marked impairment in personal functioning; and (d) marked difficulties in maintaining concentration, persistence, or pace. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, 112.02(B)(2); see also Listings 112.04 & 112.11 (referring to requirements of 112.01(B)(2). These criteria correspond to the following domains of function: (a) acquiring and using information; (b) attending and completing tasks; (c) interacting and relating with others; and (d) caring for oneself. 20 C.F.R. § 416.926a(b)(1)(i)-(iv). In addressing the domains, the ALJ found a marked limitation only in the domain of caring for oneself. (R. at 26.) Thus, while the ALJ did not explicitly reject Dr. Schmulowitz's opinion that Claimant met the Listings, the Court believes that his explanation of Dr. Schmulowitz's other opinion provides this Court with sufficient rationale to permit a meaningful judicial review. See Burnett, 220 F.3d at 112.[6] Moreover, for the reasons

---

[6] See also 20 C.F.R. § 416.927 (The ALJ, in evaluating the weight afforded to a medical opinion, must consider:

24

set forth above, the ALJ's determination that Dr. Schmulowitz's opinion is inconsistent with the evidence in the record appears to be supported by substantial evidence. However, because this Court is remanding this matter for further consideration of Dr. Laufe's notes, the ALJ should confirm this Court's understanding of the basis for his rejection of Dr. Schmulowitz's opinion that Claimant met the requirements of Listings 112.04 and 112.11.

## IV. CONCLUSION

The Court has reviewed the entire record and, for the reasons discussed above, remands the matter to the ALJ for further consideration of the relevant medical evidence consistent with this Opinion. Because the Court finds the matter must be remanded, the Court need not specifically address Plaintiff's remaining arguments. An appropriate Order accompanies this Opinion.

---

"(1) examining relationship; (2) treatment relationship; (3) length of the treatment relationship and the frequency of examination; (4) nature and extent of the treatment relationship; (5) supportability; (6) consistency; and (7) specialization."); SSR 06-3p (The ALJ must evaluate opinions from "acceptable medical sources" in accordance with the factors established in 20 C.F.R. §§ 404.1527(d) and 416.927(d), including the examining relationship, the treatment relationship including length, nature, extent, and frequency, degree to which the opinion is supported, consistency with the record, specialty, and any other factors that tend to support or contradict the opinion.); SSR 96-2p (requiring that a treating physicians' opinion be assessed in accordance with the criteria set forth in 20 C.F.R. § 416.927.).

<u>s/Renée Marie Bumb</u>
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE

Date: <u>June 26, 2014</u>